UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT FRAZIER,

          Plaintiff,

    v.

JULIA BARNETT, et al.,

          Defendant.

CASE NO. 2:23-cv-00690-JLR-BAT

**REPORT AND RECOMMENDATION**

      Plaintiff, Robert Frazier, who is currently confined at the Monroe Correctional Complex-Twin Rivers Unit (MCC-TRU), filed a *pro se* 42 U.S.C. § 1983 prisoner civil rights complaint alleging the medical care defendants provided violated his rights. Dkt. 6. By order dated May 24, 2023, the Court declined to serve the complaint due to various deficiencies and, rather than dismissing the complaint, granted plaintiff leave to file an amended complaint by June 13, 2023. Dkt. 8. On June 7, 2023, the Court granted plaintiff an extension of time, to July 5, 2023, to file an amended complaint. Dkt. 11. On June 26, 2023, plaintiff filed an amended complaint. Dkt. 12. On July 8, 2023, plaintiff filed a motion seeking a temporary restraining order (TRO) and preliminary injunction. Dkt. 13.

REPORT AND RECOMMENDATION - 1

For the reasons below, the Court recommends that plaintiff's amended complaint (Dkt. 12) be dismissed without prejudice for failure to state a claim and that the motion for TRO and preliminary injunction (Dkt. 13) be denied.

## DISCUSSION

**A.    The Amended Complaint**

The amended complaint identifies Mr. Frazier as a plaintiff and also appears to seek to add another party, Gary Bowers, as a second plaintiff. Dkt. 12. The amended complaint names as defendants Dr. Julia Barnett, M.D., the Washington State Department of Corrections (DOC) "exDirector of medical"; Leslie O'Connor, Custody Program Manager/ADA Coordinator (CPM) at MCC-TRU; CUS Sager; Dan White, Superintendent at MCC-TRU; Alex Costa HCM2; Elke Jackson, HCM2; Dr. Awad, MCC/TRU Medical Director; Paula Chandler, Associate Superintendent MCC/TRU; Steve Sinclare, Secretary of the DOC; and Steven Sager, CUS of D-Unit at MCC-TRU. *Id.* The amended complaint alleges "this lawsuit challenges the Washington Department of Corrections (DOC's) regular practice of withholding necessary medical care from patients with serious and painful medical conditions." *Id.* In support of this claim, the amended complaint further alleges:

(1)    DOC denies prisoners access to adequate medical care by using a "health-care pre-approval system that regularly results in arbitrary and medically unsound decisions." *Id.*

(2)    "DOC's inadequate pre-approval system denies medically necessary treatment to plaintiff and those similarly situated by allowing a committee of clinicians and non-medical administrators who have little familiarity with the patient and NO authority to override the clinical recommendations of the patient's treating DOC practitioner and outside specialists 'OR'

REPORT AND RECOMMENDATION - 2

under this pre-approval system, DOC regularly disregards clear evidence that a patient's conditions(s) is causing chronic and substantial pain and worsening of existing conditions." *Id.*

(3) "The defendants [sic] failure to properly review the medical history of the plaintiff/plaintiffs incarcerated and their denials of necessary care exposed the plaintiff and those similarly situated to a substantial risk of ongoing and unnecessary pain worsening of existing conditions adding injury to injury, permanent damage and/or other serious harm in violation of the eighth amendment of the United States Constitution." *Id.*

(4) The defendants owed a duty to plaintiff under the Offender Health Plan (OHP) which defines which services are medically necessary. *Id.*

(5) The conditions of plaintiff's confinement violate the Eighth Amendment and Article 1 Section 14 of the Washington State Constitution. *Id.*

(6) Defendants' failure to adequately address plaintiff's health issues caused him to suffer chronic pain and his conditions to worsen and also caused sleep disruptions, self-deprivation, digestive troubles, skin disorders and rashes.

(6) Plaintiff has a history of chronic pain, heart disease and diabetes. Plaintiff received inadequate medical care for these conditions causing his conditions to worsen. The state/DOC failed to take reasonable measures to decrease the known risk of serious harm to plaintiff.

(7) Plaintiff's medical records, grievances, HSKs, etc. show plaintiff was not receiving the level of care his conditions require.

(8) Defendants' lack of knowledge regarding plaintiff's condition and misdiagnosis led to inadequate treatment.

REPORT AND RECOMMENDATION - 3

(9) Defendants refuse to provide plaintiff with necessary diagnosis and effective treatment for his conditions of orthostatic hypertension, gastroparesis, diabetes, "dysautonmie", obstructive sleep amnea syndrome (for the first 7 years of this violation), and coronary arteriosclenosis.

(10) Plaintiff Gary Bowers is 84 years old and has been released from custody from MCC. While at MCC Mr. Bowers was allowed to suffer from a number of chronic conditions and substantial pain and suffered some loss of vision due to defendants' refusal to provide necessary diagnosis and treatment.

(11) Defendants were aware of plaintiff's conditions and allowed degenerative effects to impact plaintiff's serious medical conditions. Orders given by specialists requesting referrals to doctors or clinics which could have provided treatment were disregarded for nonmedical reasons.

(12) The CRC failed to respond to direct appeals and DOC administrators were allowed to intentionally deny, delay access of medical care to plaintiffs causing worsening of existing conditions and invoking other conditions.

(13) The OHP defines the type of medical care the DOC considers "medically necessary." If a patient needs medical care that is not listed as "medically necessary" in the OHP, the DOC healthcare provider cannot provide the treatment unless they obtain preapproval.

(14) If a DOC medical provider cannot diagnose or adequately treat a patient's condition, they must obtain prior approval before referring plaintiff to an outside specialist. Most requests for approval to refer or treat patients are decided by the DOC Care Review Committee (CRC) which consists of DOC physicians, physicians assistants and nurse practitioners who participate in a weekly conference call where they vote to approve or deny care for patients in DOC custody.

(15) Whether a patient will receive care recommended by his treating provider is determined by a majority vote of the CRC members present on the call, the majority of whom do not know

REPORT AND RECOMMENDATION - 4

the patient, have never examined the patient, have never reviewed the patient's medical history, and simply vote with the patient's provider suggestion.

(16) The CRC often disregards patients' complaints of chronic and substantial pain.

(17) CRC decisions are based on committee members' interpretation of the OHP not on the application of standardized medical criteria or objective clinical protocols and CRC decisions are often arbitrary.

(18) Upon information and belief, the CRC rejects approximately sixty percent of requests and recommendations submitted by treating medical providers.

(19) Numerous patients, including plaintiff, suffer chronic and substantial pain and functional limitations due to the CRC's pattern and practice of denying care recommended by treating medical providers.

(20) Defendants were aware of plaintiff's diagnosis and that his condition would worsen if not treated effectively. Defendants decided not to treat plaintiff for minor medical concerns allowing serious medical issues to worsen. As a result, plaintiff was harmed by a number of illnesses connected to diabetes and "dysautonomia." After a loss of partial vision in his left eye and a stroke, plaintiff was removed from the hospital prematurely due to the actions of Dr. Awad.

(21) Plaintiff was partially paralyzed after this incident causing serious weakness on his left side. Defendants withheld physical therapy as ordered by the specialist to prevent permanent injury.

(22) Plaintiff was subjected to a pattern of disability and racial discrimination and open retaliatory treatment. Specifically, defendants failed to return plaintiff's fitted wheelchair after it was given to them for repairs. Plaintiff alleges defendant Jackson removed the wheelchair, and it was replaced with a "broken down chair" of "a non therapeutic nature" causing further damage

to plaintiff's condition. Defendants also stopped providing transport to plaintiff's medical appointments in violation of the ADA.

(23)   The DOC rarely reverses decisions made by the CRC on appeal.

(24)   The CRC is withholding necessary medical care from plaintiff. Plaintiff asserts he is entitled to a second opinion from a non-DOC doctor.

(25)   In 2016, plaintiff was diagnosed with dysautonomia, gastroparesis caused by diabetes. The effects of plaintiff's condition have been complicated by diabetes mallitus neuropath and autonomic neuropathy secondary to his diabetes cases severe orthostatic hypotension and syncope. Plaintiff alleges his conditions cause him chronic and substantial pain forcing him to go to the hospital and to use a wheelchair.

(26)   Plaintiff has been told since 2016 he would be taken out for treatment to the dysautonomia clinic but this has not happened.

(27)   Plaintiff has notified DOC medical staff about his pain and requests for treatment for "RA" but the only treatment he has been offered is pain medication which is not effective.

(28)   Plaintiff's "RA" has been allowed to compromise the mobility of his joints and the pain interferes with activities such as eating, sleeping and walking.

(29)   Black inmates such as plaintiff are not being given the same level of care as white inmates with similarly situated injuries or disabilities.

(30)   As relief, plaintiff seeks: a declaration that Defendants policies and practices governing the prior approval of medical care requested by DOC medical providers and care by specialists not employed by DOC violate the Eighth Amendment; preliminary and permanent injunctions restraining Defendants from denying without reasonable medical justification necessary care for

REPORT AND RECOMMENDATION - 6

the plaintiff's serious medical needs; an award of plaintiff's reasonable attorney fees and litigation costs; and such other further relief as justice may require. *Id.* at 26.

**B.    Legal Standards**

To sustain a § 1983 action, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff alleges the medical care defendants have provided violated the Eighth Amendment. The Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To establish "deliberate indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *Id.* at 104. A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992).

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988). Further, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. *McGuckin*, 974 F.2d at 1060; *Shapely v. Nevada Bd. of State Prison Comm'rs.*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff also alleges the medical care provided by defendants violated Article 1, Section 14 of the Washington State Constitution which provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."

REPORT AND RECOMMENDATION - 7

Plaintiff also raises general allegations of retaliation by defendants. To prevail on a retaliation claim, a plaintiff must allege and prove a defendant retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983). In order to establish a retaliation claim, an inmate must show: (1) a state actor took some adverse action against the inmate; (2) because the inmate engaged in constitutionally protected conduct; (3) the adverse action chilled the inmate's exercise of First Amendment rights; and (4) the adverse action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff also makes one passing reference to the ADA (Americans with Disabilities Act). The ADA provides a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim of disability[1] discrimination under Title II [of the ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is

---

[1] The term "disability" under the ADA means, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

In order to recover money damages under Title II, a plaintiff must prove that he was discriminated against intentionally and the Ninth Circuit uses the "deliberate indifference standard." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). To prove intentional discrimination, plaintiff must show: 1) that a public entity had knowledge that a violation of his rights under the ADA was substantially likely to occur; and 2) at a minimum, the public entity failed to act. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002).

"The ADA prohibits discrimination *because of* disability, not inadequate treatment for disability." *Simmons v. Navajo Cty*, 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added) *overruled on other grounds by Castro v. Cnty of Los Angeles*, 833 F.3d 1060 (9th Cir. (en banc); *see Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA does not create a remedy for medical malpractice.")); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) ("The duty to provide 'reasonable accommodations' under the ADA and the Rehabilitation Act arises only when a policy discriminates *on the basis of disability*.").

**C.    Analysis**

Plaintiff's allegations are too generalized and conclusory to state a claim under any of these standards. Plaintiff was previously advised in the Court's order declining service, that he

REPORT AND RECOMMENDATION - 9

must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered. Plaintiff was advised that for each allegation, he must identify the name of the person who violated his constitutional right, and the specific injury he suffered because of that person's conduct, and the date the conduct occurred. *See Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Plaintiff fails to cure this deficiency in his amended complaint.

Although plaintiff appears to take issue with the DOC's "pre-approval system" both as a policy and as applied to him personally, his allegations regarding the alleged deficiencies in that system are generalized and conclusory and unsupported by specific facts. Plaintiff fails to sufficiently link the alleged deficiencies in the pre-approval system, or any specific action or inaction taken by any individual defendant, to any specific injury to himself or others. Plaintiff frequently makes allegations against "defendants" generally but fails to identify what individual defendants did or failed to do that violated his constitutional or statutory rights and caused injury.

Plaintiff includes numerous attachments including grievances, letters, and medical records but fails to directly link any of those attachments to any specific claims in his complaint. While attachments and exhibits might sometimes provide evidentiary support for the allegations in a complaint, they are not a substitute for a properly pleaded complaint. The Court cannot divine from plaintiff's attachments the specific claims he intends to bring against specific defendants in this action. *See Henderson v. Scott*, 2005 WL 1335220, at *1 (E.D. Cal. May 4, 2005) ("it is [P]laintiff's responsibility to make each claim clear and provide only a short statement of facts supporting [each] claim[.]").

For the foregoing reasons, the Court recommends that plaintiff's amended complaint (Dkt. 12) be dismissed without prejudice for failure to state a claim.

REPORT AND RECOMMENDATION - 10

### D. Gary Bowers

The Court notes that plaintiff's amended complaint appears to seek to add a second plaintiff to the action, Gary Bowers. However, plaintiff has not moved to certify this action as a class action, and plaintiffs, proceeding *pro se* and without counsel, are not qualified to act as class representatives as they are unable to fairly represent and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). While *pro se* plaintiffs may appear on their own behalf, they may not appear as attorneys for others in a class action and neither Mr. Frazier nor Mr. Bowers here claims to be an attorney. *See McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (non-lawyer had no authority to appear as an attorney for other persons in a purported class action); *Abel v. Alameda Cty.*, 2007 WL 3022252, at *1 (N.D. Cal. Oct. 13, 2007) ("Pro se prisoner plaintiffs may not bring class actions."). Furthermore, Mr. Bowers has not filed an application to proceed *in forma pauperis* nor has he signed the amended pleading as required by Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11 ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented.").

Accordingly, the allegations with respect to Mr. Bowers are not properly before the Court at this time and the Court should decline to consider them. Even if the allegations with respect to Mr. Bowers were properly before the Court, the allegations are generalized and conclusory and fail to adequately identify what individual defendants did or failed to do that violated Mr. Bowers' constitutional or statutory rights and caused injury. In short, the allegations with respect to Mr. Bowers fail to state a claim. Thus, to the extent the Court finds it appropriate to consider Mr. Bowers' claims at all, they should be dismissed without prejudice for failure to state a claim. Mr. Bowers remains free to pursue his claims in a separate action.

### E. Leave to Amend

REPORT AND RECOMMENDATION - 11

Plaintiff was previously advised of the deficiencies in his original complaint and was granted leave to amend to cure those deficiencies, but plaintiff's amended complaint remains similarly deficient. As it appears the deficiencies in the complaint and amended complaint are not capable of being cured through further amendment, the Court recommends that further leave to amend not be granted.

### F.  Motion for Temporary Restraining Order and Preliminary Injunction

Plaintiff has also filed a motion for temporary restraining order and preliminary injunction. Dkt. 13. In that motion plaintiff alleges he had a stroke "as a proximate result of the combined actions of the defendant(s) long term pattern of malicious harassment." *Id.* Plaintiff alleges his neurologist requested that he be provided with a full course of "occupational; physical and cognitive therapy" but the defendants "failed to provide him with physical therapy" or with "a consultian [sic] with a physician qualified to assess and treat his condition." *Id.* Plaintiff alleges he is experiencing limited mobility, pain and stiffness and is forced to use a wheelchair most of the time. *Id.*

Plaintiff appears to allege that during a visit to Evergreen Health Neurosciences office on March 30, 2023, plaintiff was "referred for a follow-up with Dr. Armitans[.]" *Id.* Plaintiff alleges the "medical admins team", of Elek Jackson and Alex Costa, "submitted a list of symptoms to this doctor, that were not the plaintiff's list" so that Dr. Armitans would not see a need to see plaintiff. *Id.* Plaintiff also alleges defendants Jackson and Costa sent the Providence rehabilitation center information about plaintiff's condition and Providence then refused to treat the plaintiff. *Id.*

In his declaration in support of his motion, plaintiff alleges he experienced a stroke in January 2023 and was "prematurely" released from the Evergreen Health Stroke Center. *Id.*

Plaintiff alleges the neurologist at Evergreen, Dr. Lundeen, told him that defendant Awad informed her he could not receive aftercare at that facility due to lack of insurance. *Id.* Plaintiff alleges Dr. Lundeen gave orders that plaintiff be provided a full course of occupational/and cognitive therapy as well as physical therapy. *Id.* Plaintiff alleges he was also hospitalized at Harborview and examined by a Dr. Hamilton in May 2023 who diagnosed him with non-epileptic spells and Functional Neurologic Disorder. *Id.* Plaintiff alleges despite the orders for therapy he has only been taken to Harborview physical therapy center one time. *Id.* He alleges that there is a physical therapist who comes to the prison facility once a month but that the services are inadequate. *Id.* Plaintiff alleges defendant Awad, Jackson, and Costa are aware of the "damage that is being allowed to have a compounding effect on all of the plaintiffs medical conditions." *Id.*

Plaintiff seeks a temporary restraining order "requiring the Defendants to arrange for examination and plan of treatment by a qualified specialist, and to the preliminary injunction requiring the defendants to carry out that plan of treatment." *Id.*

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the [requesting party] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish" (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Counsil, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit also allows for the "serious questions" variation of the test, where "a preliminary injunction is proper

REPORT AND RECOMMENDATION - 13

if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). The purpose of preliminary injunctive relief is to preserve the status quo or prevent irreparable injury pending the resolution of the underlying claim. *Sierra On-line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Here, while plaintiff makes a generalized assertion in his amended complaint that some unspecified defendants have withheld physical therapy services, plaintiff's specific allegations against these specific defendants are not raised in his underlying complaint and, as discussed above, the underlying complaint as pled fails to state a claim. For this reason alone, plaintiff's motion for TRO and preliminary injunction should be denied. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."); *Smith v. Oreol*, 2017 WL 11296962, *2 (C.D. Cal. 2017) ("Plaintiff's preliminary injunction is premature. Plaintiff has not yet filed a complaint that contains a cognizable claim for relief, and by extension, no defendants have been served with a summons and complaint. Therefore, the Court lacks jurisdiction over any of the individuals alleged to be involved in the harassment.").

Even if this were not the case, plaintiff fails to satisfy the requirements for granting a TRO or preliminary injunction. Plaintiff appears to allege defendants Jackson and Costa intentionally gave incorrect information to a specialist, Dr. Armitans, and to Providence rehabilitation center, in order to prevent plaintiff from actually seeing a specialist. But plaintiff offers no facts, beyond his own speculation, to support this assertion. Plaintiff submits a copy of

REPORT AND RECOMMENDATION - 14

a grievance regarding the referral to Dr. Armitans in which the response, dated May 3, 2023, states that the doctor "declined the referral, as the provider did not believe that your reported symptoms are related to dysautonomia; you were referred back to neurology. You currently have two authorized neurology consultations open, as well as authorized consultations for physical therapy."

This grievance response does not appear to support plaintiff's claim. Rather, plaintiff's assertion that incorrect information was submitted to Dr. Armitans and to Providence rehabilitation center appears to be purely speculative. Furthermore, the May 3, 2023, grievance response reflects that plaintiff was authorized to obtain another neurology consultation and a consultation for physical therapy. Plaintiff does not indicate whether he has received or is scheduled to receive another neurological consultation. Plaintiff also acknowledges that he was seen at Harborview for physical therapy on one occasion and appears to acknowledge that he has received physical therapy at the prison facility where he is housed, although he believes that physical therapy is inadequate.

On this record, in the absence of a serviceable complaint, and without additional facts and detail from plaintiff to support his allegations in his complaint or in his motion, plaintiff fails to show he is likely to succeed on the merits of his claim of inadequate medical care, or that he is likely to suffer irreparable harm in the absence of preliminary relief.

Accordingly, the undersigned recommends that the motion for temporary restraining order and preliminary injunction be denied.

//

//

//

**CONCLUSION**

For the foregoing reasons, the Court recommends that plaintiff's amended complaint (Dkt. 12) be DISMISSED without prejudice for failure to state a claim and that the motion for TRO and preliminary injunction (Dkt. 13) be DENIED.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 2, 2023**. The Clerk should note the matter for **August 4, 2023**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 12th day of July, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge